LITCHFIELD CONSTRUCTION COMPANY and Another, Respondents, *v.* THE CITY OF NEW YORK, Appellant.

First Department, April 30, 1926.

Municipal corporations — action against city of New York based on contract for construction of subway entered into between plaintiff and Public Service Commission — city is not liable for damages arising out of negligence of engineer of Public Service Commission in failing to supply working drawings — abandonment of construction of certain short spur was authorized by contract and Rapid Transit Act (Laws. of 1891, chap. 4, as amd. by Laws of 1909, chap. 498), § 6, subd. 2 — recovery may be had for excess cement used under orders of engineer — failure of city to complete sewer within agreed time renders it liable for cost of pumping sewage — no recovery can be had based on false estimate — counterclaim based on failure to complete work as agreed is disallowed — additional allowance to plaintiff's counsel denied — Greater New York Charter, § 261, does not affect question of interest on claims — allowance of interest on claim for pumping sewage was proper — no interest allowable on retained percentages until demand made at time when payment was authorized — erroneous admission and exclusion of evidence.

The city of New York is not liable to a contractor who held a contract entered into between it and the Public Service Commission of the State of New York on behalf of the city for the construction of a subway, for damages arising out of the alleged negligence of the engineer of the Public Service Commission in failing to supply working drawings within the time stipulated in the contract, for the Public Service Commission is not a voluntary agent of the city of New York and no liability is imposed on the city for the torts committed by the Commission or its employees.   Furthermore, the city has no power of appointment or control over the employees of the Public Service Commission, the contracts do not impose upon the city any liability for the torts of the servants of the Public Service Commission, and the city was powerless to prevent the delay complained of.

Furthermore, under the terms of the contract the plaintiff and the Public Service Commission expressly recognized that the engineer of the Public Service Commission occupied a position over which the city of New York had no control.

A provision in the contract requiring the contractor, if he shall claim compensation for any damage sustained by reason of any act of neglect or fault of the city or the Public Service Commission or their agents, to make a statement to the engineer and file an itemized statement with him, provides merely a procedure to be followed as a condition precedent to the enforcement of any possible

liability but does not create a liability on the part of the city and, furthermore, the Public Service Commission could not create such a liability where none otherwise existed.

The plaintiff cannot recover damages based on the abandonment by the city of the construction of a certain spur 187 feet long under Central Park, contemplated by the original plans, for the contract authorizes the Commission to alter it in any way the Commission may deem necessary for the public interest, without creating a liability to the contractor, and subdivision 2 of section 6 of the Rapid Transit Act (Laws of 1891, chap. 4, as amd. by Laws of 1909, chap. 498) gives the Public Service Commission the power to alter plans and specifications so long as it does not make any change in the general plan of construction; the abandonment of the spur did not make any change in the general plan of construction. Furthermore, the city cannot be held liable for the acts of the Public Service Commission or its servants in directing the abandonment of the spur in question.

The plaintiff is entitled to recover the value of excess cement used, since the contract was open to construction as to the quantity to be used in mixing the concrete and, therefore, the plaintiff had the right to rely upon the direction of the engineer and upon his construction of the contract as to the required amount.

The plaintiff may recover also for the cost of pumping sewage, since it appears that the contract called for the reconstruction of two sewers in Seventh avenue to be connected with a new outlet to be constructed by the city; that the plaintiff completed its work as provided by the contract but that the city did not complete the new outlet until sixteen months after the completion of the sewers by the plaintiff and that, therefore, the plaintiff was required to pump the sewage into the old sewer during the period between the completion of the new sewers and the completion of the outlet by the city; this work was not contemplated by the contract and comes within a provision thereof for the payment for unexpected work on the cost plus basis.

It was error for the court to direct a verdict for the plaintiff on his claim for damages alleged to have been caused by the deliberate and intentional false estimate made by the Public Service Commission of the quantities of work to be done, for the question of fraud was one for the jury, and furthermore, the plaintiff was not entitled to recover in any event, since the claim was based on damages for tort alleged to have been committed by the Public Service Commision.

Defendant's counterclaim based on the failure of the plaintiff to complete the contract within the time specified was properly dismissed, since the jury found that the work was delayed to the prejudice of the plaintiff by the failure of the Public Service Commission to furnish working drawings, and the plaintiff was entitled to recover the retained percentages which the defendant held against its claim for liquidated damages.

In view of the outcome of this appeal the additional allowance of $2,000 granted to the plaintiff should be disallowed.

The provision of section 261 of the Greater New York Charter, that no action shall be prosecuted or maintained against the city until the expiration of thirty days after the demand or claim has been presented to the comptroller, bears only on the right to sue and not upon the question of interest.

The court properly allowed interest on the amount recovered for the pumping of sewage from the date of the demand for payment.

Interest was not allowable upon the retained percentages prior to the date of demand for payment at a time when the percentages were payable pursuant to the terms of the contract.

A reversal on the main question of damages is required by the erroneous exclusion of the final certificate offered by the defendant, and the improper admission in evidence of the payrolls of the contractor, which were admitted without necessary preliminary proof.

MERRELL, J., dissents.

APPEAL by the defendant, The City of New York, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 3d day of July, 1924, upon the verdict of a jury rendered in part by direction of the court, and also from an order entered in said clerk's office on the 2d day of July, 1924, denying defendant's motion for a new trial made upon the minutes and granting an extra allowance of $2,000 to the plaintiffs.

*George P. Nicholson, Corporation Counsel* [*Willard S. Allen* of counsel; *John F. O'Brien* and *William E. C. Mayer* with him on the brief], for the appellant.

*Edward M. Grout* and *Paul Grout* [*Edward M. Grout* of counsel; *Dean Potter* with him on the brief], for the respondents.

FINCH, J. The questions which arise upon this appeal have to do with the liability of the city under a written contract made by the Public Service Commission, on behalf of the city, for the construction of a section of subway work. The contractor sues the city, in part, for moneys which may be said to be due under the contract and, in part, for damages. The alleged liability of the city upon these various items makes necessary the determination upon this appeal of certain limits of the liability of the city under such a contract.

The complaint alleges that on or about May 21, 1915, the Public Service Commission for the First District, on behalf of the city, entered into a contract with the Litchfield Construction Company, one of the plaintiffs herein, for the construction of certain sections of the Broadway-Fourth Avenue Rapid Transit Railroad in accordance with certain specifications and drawings and at certain unit prices to be paid by the city of New York. By section 4 of chapter 3 of the contract it is provided that working drawings necessary to amplify the contract would be furnished by the engineer of the Public Service Commission to the contractor; that the first of these would be furnished within thirty days after the delivery of the contract and thereafter from time to time, as might be reasonably and necessarily required by the contractor. The contract was delivered on May 26, 1915. It required actual work to be commenced within sixty days thereafter, completion for railroad operation in twenty-two months, or by March 26, 1917, and entire completion in twenty-six months, or by July 26, 1917.

The work was completed for railroad operation March 4, 1919, and was entirely completed May 9, 1919, a delay of twenty-three months and six days in respect to the first period and of twenty-one months and fifteen days in respect to the second or final period. The contract provided that time was of the essence. The complaint alleges two causes of action.

By the first cause of action the sum of $79,889.85 is demanded, consisting of two items, namely, an item of $71,090.15, for percentages retained from various payments pursuant to article XXXIII of the contract, and an item of $7,799.70 for extra work, labor and materials claimed to have been furnished under article XII of the contract.

The second cause of action consists of three items: *First,* for $982,336.85 claimed as damages for breach of the contract because of alleged delays in furnishing working drawings and in approving sheet drawings of structural steel necessary to the progress of the work; *second,* a claim for $72,666.28, subdivided as follows: (a) Damages for breach of contract in that there was eliminated a section of the construction work which was the subject of the contract, namely, the spur under Central Park from Seventh avenue and West Fifty-ninth street; (b) by requiring the contractor to use fourteen per cent more cement in making the concrete than was required by the specifications; (c) by requiring the plaintiff to underpin certain buildings which were founded upon rock and to rebuild certain duct lines; the third item was for $82,134.07 for damages claimed because of false estimates of the quantities, nature and extent of the work to be performed.

At the close of the whole case the following took place: Both parties moved for the direction of a verdict on the claim for the pumping of certain sewage under the second item of the first cause of action. The court directed a verdict in favor of the plaintiffs on this item for $9,850.75.

Likewise both parties moved for the direction of a verdict in connection with the claim for damages for the elimination of the spur under Central Park. The court directed a verdict in favor of the plaintiffs on this item for $16,813.65.

The plaintiffs moved for a directed verdict on the claim for excess cement required to be used in making concrete as claimed in item (b) above. The defendant asked to go to the jury on the question as to whether or not the contractor had complied with the specifications. The court granted the plaintiffs' motion for the direction of a verdict in the sum of $5,578.19.

The plaintiffs moved for the direction of a verdict on the claim for damages because of alleged false estimates of quantities of

work to be done.  As to this, the defendant asked to go to the jury on the question as to whether or not the contractor was in fact misled, and as to whether there were any damages suffered. The court, however, directed a verdict in favor of the plaintiffs for the sum of $40,296.05.

The total of the directed verdicts in favor of the plaintiffs amounted to $72,538.64.

There were then submitted to the jury issues arising in connection with retained percentages of money earned and damages for breach of contract by delay in furnishing plans.  As to these, the jury returned a verdict of $89,876.59 on the first item, and on the second item, namely, damages for breach of contract for delay, the jury returned a verdict for $813,000, a total in all of $975,415.23.

A counterclaim interposed by the city, claiming liquidated damages of $159,684.85 for the contractor's delay in completing the work on time and $87.56 for work which it is claimed the contractor failed to perform, or a total counterclaim of $159,772.41, was dismissed on the merits.  Interest upon said verdict was assessed at $3,206.84 and the costs were taxed at $177.04 together with an additional allowance of $2,000, making a total of $980,799.11 for which judgment was rendered.

Taking up first the item of damages for the delay of the engineer of the Public Service Commission in furnishing plans, the question arises whether the city is liable for damages resulting from the negligence of the employees of the Public Service Commission as distinguished from liability for what can be said to be moneys due under the contract, and for extra work and materials ordered by the Public Service Commission and actually supplied by the contractor.

To the contention of the contractor that the city is also liable under such a contract for damages as distinguished from moneys due and extra work and materials furnished as aforesaid, the first answer is that this court is already committed to a contrary view. In *Degnon Contracting Co.* v. *City of New York* (202 App. Div. 390), where Mr. Justice GREENBAUM wrote for a majority of the court, it was held that the city was not liable for the acts of the Public Service Commission in delaying the preparation of plans under a similar subway contract.  Such holding was upon the ground that the Public Service Commission, and not the city, was the body charged by law with the preparation of plans for the construction of subways.  It was further held that the Public Service Commission was not the agent, in a general sense, of the city of New York and that the city was not responsible for damages arising out of the negligence of the Commission or its agents.  For this proposition a number of authorities are cited.  In each of the

cases cited the action was predicated upon negligence. Mr. Justice GREENBAUM further took the position that negligence was the theory upon which the *Degnon Contracting Co.* case was predicated, stating: "In the instant case the theory of the complaint is that the acts of the Commission or its chief engineer were careless, in that they delayed in giving certain plans to the plaintiffs. In other words, the real basis of the claim is the negligence of the engineer or his subordinates."

While it is possible to distinguish the cases cited as authorities in *Degnon Contracting Co.* (*supra*) upon the ground that they may be said to have arisen in tort, rather than in contract, said decision itself squarely held that a failure of the Public Service Commission to furnish plans as provided by the contract (which is the identical act complained of in the case at bar) did not give rise to an action for damages against the city. Also it is to be noted that although the failure to furnish plans as required by the contract was occasioned by negligence on the part of the engineer, such failure, nevertheless, constituted a breach of contract. At page 394, Mr. Justice GREENBAUM said:

"The contract in suit specifically provided as to detail drawings as follows: ' Section No. 36. The Engineer [referring to the engineer of the Public Service Commission] will prepare and furnish to the contractor, from time to time as required, drawings and plans amplifying such details of the contract drawings as may be necessary; and drawings and plans necessary to show the adjustment and reconstruction of all surface and sub-surface structures wherever the reconstruction of the same is necessitated by the construction of the railroad. These plans must be strictly followed, unless local conditions should develop, during the construction, suggesting changes, when, with the approval of the engineer, such changes may be permitted.'

"Under article 24 it is provided that the engineer ' shall determine all questions in relation to the works and the construction thereof and shall in all cases determine every question which may arise relative to fulfillment of this contract on the part of the contractor. His determination and estimate shall be final and conclusive upon the contractor, and in case any question shall arise between the parties hereto, touching this contract, such determination and estimate shall be a condition precedent to the right of the contractor to receive any money under this contract.'

"It thus appears that the parties by express agreement have recognized that the engineer occupies a position over which the defendant has no control and that both the defendant and the plaintiff would in many instances be absolutely bound by the

decision which the engineer may make, assuming, of course, that it is not made as the result of fraud or of bad faith.   It is difficult to understand upon what theory the city may be held liable for the acts of the engineer in delaying the delivery of plans to plaintiff who knew or was presumed to know the provision of the statute and the contract, which conferred the power upon the engineer to prepare plans and furnish them to the contractor.

" It would seem to follow that it must have been understood by the parties that for any negligence or delay occasioned by the engineer in respect of a matter under his jurisdiction and over which the city had no control whatever, the city could not be held responsible."

While it might be contended that the above holding was *dicta* since the decision can be sustained upon another ground, yet so clearly was the issue raised by the prevailing and dissenting opinions as to whether the city was liable for damages arising because of the failure of the engineer of the Public Service Commission to furnish plans in accordance with the provisions of the contract, that it must be held that this court is bound to follow such decision as authority.   When the *Degnon* case was reviewed by the Court of Appeals (235 N. Y. 481), said court specifically refrained from passing upon the question of the liability of the city for damages under the contract in question, saying: " We agree with the Appellate Division that this plaintiff was not entitled to recover for the increased cost and expense of executing the contracts in question because of the failure of the engineer of the Public Service Commission to furnish plans as provided in the agreement.   We hold this conclusion even though we assume, without deciding it, that the city was liable for damages caused by the neglect of an engineer in the employ and under the control of the Public Service Commission which had executed in its behalf the contract in question."

By what has just been said with reference to the *Degnon Contracting Co. Case* (*supra*) there is no disposition to question the correctness of its holding that the city of New York is not liable for damages based upon the negligence of the employees of the Public Service Commission in failing to carry out the provisions of the contract.   The respondents claim that the city is in no different situation from that of any voluntary party to a contract who chooses its own agent to carry out its voluntary acts.   The city, however, in these subway contracts, occupies a very different position.   Just as municipal contracts differ from ordinary contracts, so do contracts such as in the case at bar, where the State seeks to impose upon the municipality certain obligations in connection

with work which affects the whole State, differ from contracts voluntarily and directly entered into by a municipality. No one will seriously dispute that rapid transit is a matter of public interest with which the people of the entire State are concerned. The Legislature of the State undertook to provide means of adequate rapid transit and in formulating a plan in order to carry out the same, appointed as officers of the State the Public Service Commission. That the agents so constituted are agents of the State independent of the municipal government in the performance of their designated duties has been repeatedly adjudicated. As was said by Mr. Justice GREENBAUM in the *Degnon Case (supra):* " It has been repeatedly held that the Rapid Transit Railroad Commissioners, as they were formerly termed, or the Public Service Commissioners of the First District, as their successors at the time in question were called, and who have been since superseded by the Transit Commissioners, are not agents in a general sense of the city of New York, nor are any of their employees to be regarded as such agents. The Public Service Commission is a State body, independent of the municipal government. (*People ex rel. New York Dock Co.* v. *Delaney,* 192 App. Div. 734, 739.) " The State, therefore, appointed its agent the Public Service Commission to carry out these contracts and in connection therewith placed certain obligations upon the city. In some instances, however, the action of the city in accepting the contracts involves a voluntary approval by the city. The city thus gives its approval to the cost of construction, the use of its streets and in a general way its consent to the general plan of construction and in certain other particulars; but many of the obligations of the city are involuntary and are placed upon it by the State. As was said by Mr. Justice SHEARN in *McGovern* v. *City of New York* (185 App. Div. 609, 624), quoting from his opinion in *People ex rel. Holbrook, Cabot & Rollins* v. *Mitchel* (N. Y. L. J. Aug. 24, 1915): " An analysis of the entire act and of each provision under which the board of estimate and apportionment is directed or authorized to take action concurrently with the Public Service Commission, or after the Commission has acted, will demonstrate that the sole function of the board of estimate and apportionment, with reference to construction contracts, is to provide funds to meet the cost of such construction, and that the board has no authority or jurisdiction whatever with regard to the terms and conditions of the contracts. A detailed analysis would too greatly extend this opinion, but it may be noted here that the act (section 6–1)*

---

* See Rapid Transit Act (Laws of 1891, chap. 4), § 6, subd. 1, as amd. by Laws of 1909, chap. 498, and Laws of 1910, chap. 205.— [REP.

provides that the Commission shall prepare the detailed plans and specifications, including such devices and appurtenances as it may deem necessary, and (section 26–2)* that ' such contract for construction shall contain such terms and conditions * * * as said Commission shall determine to be best for the public interests.' In the Commission, and not in the corporation counsel or in the board of estimate and apportionment, is lodged the power to compel obedience to the provisions of rapid transit contracts and certificates (section 9–1),† and to the Commission is intrusted the acquisition of the necessary real estate and rights and easements therein without submission of its action to any board, and coupled with the power to direct the corporation counsel to institute such condemnation proceedings as it may deem necessary. Throughout the act it is apparent in all its important sections that the Commission is vested with complete power as the planning and managing board, and that the board of estimate and apportionment, so far as construction contracts are concerned, is the financial board to determine the limit to be set to the city's rapid transit expenditures. In all matters involving the granting of franchises, the determination and establishment of routes and general plans of construction, equipment and method of operation, the board of estimate and apportionment has had, since the Elsberg legislation of 1906,‡ a right of approval and a determining voice, as is natural and proper. In every such case the act uses the word ' approve ' in conferring the power upon the city, whereas in section 37§ it is only a consent that is required. The words ' approval ' and ' consent ' are not used in the act as synonymous. The board of estimate and apportionment is given express authority to approve ' general plan ' and, as the legal authority in charge of streets, to consent to the use of particular streets for railroad purposes. The approval of general plans of construction involves a determination of the advisability of those general plans, and the board of estimate and apportionment might be well within its rights in insisting that the form and substance of such general plans be made in all respects satisfactory to it before granting its approval. The approval referred to in the act is properly construed as an approval both as to terms

* See Rapid Transit Act, § 26, subd. 2, renumbered from § 34, added by Laws of 1894, chap. 752, as amd. by Laws of 1909, chap. 498, and Laws of 1912, chap. 226; since amd. by Laws of 1917, chap. 625.— [REP.

† See Rapid Transit Act, § 9, subd. 1, as amd. by Laws of 1909, chap. 498.— [REP.

‡ See Laws of 1906, chaps. 472, 606, 607.— [REP.

§ See Rapid Trans't Act, § 37, added by Laws of 1894, chap. 752, as amd. by Laws of 1909, chap. 498; Laws of 1911, chap. 888; Laws of 1913, chap. 540, and Laws of 1915, chap. 544; since amd. by Laws of 1917, chap. 625, and Laws of 1921, chap. 608.— [REP

and conditions, but ' consent ' cannot be distorted into a synonym for ' approval ' both as to ' terms and conditions ' where the ' terms and conditions ' of the contract are, under the terms of the statute (section 37–2), to be fixed by another body. The ' consent ' required from the board of estimate and apportionment is a consent merely to the execution of an agreement committing the city to spend money, a conclusion which is strongly fortified by finding the provision for that ' consent ' part and parcel of a section headed ' issue of bonds ' and dealing almost exclusively with that subject and the provision of money for rapid transit purposes."

A compelling reason, therefore, for limiting the liability of the city under the contract to moneys due on account of performance thereunder and for extra work and materials ordered to be furnished under the contract as aforesaid and for holding that the city is not liable for damages caused by acts of commission or omission on the part of the Public Service Commission, as distinguished from moneys due under the contract, is that the city has no power of appointment or control over the employees of the Public Service Commission, and there is nothing in the language of the contracts to show that the State intended to impose liability upon the city for their acts. The city was powerless to prevent the delay of a single day in the prosecution of the work or the furnishing of plans. It could give no orders in reference thereto. Nevertheless it is sought to hold it liable in damages for these acts and omissions over which it had neither power nor control. If the city were held to be liable for these claims for damages, there would arise grave danger that unprecedented liability therefor might be thrown upon the city. The words of Peckham, J., in *O'Brien* v. *Mayor* (139 N. Y. 543, 587) very aptly apply here:

" Having decided that the plaintiffs cannot recover any greater sum than that admitted to be due them in the final certificate for moneys earned under the provisions of the contract, we come to the consideration of that class of claims set up by the plaintiffs for the increased cost of work, occasioned by the alleged omissions, mistakes or acts of the defendant, or of those officers for whose acts the defendant is alleged to be responsible, in the course of the performance of the work.

" One of the chief causes of action of this character is for the increased cost of the work actually performed by plaintiffs, occasioned by alleged erroneous grades, lines and centers given them by the engineers of the commission. The plaintiffs allege they proved a *prima facie* case for a recovery, and that their evidence should have been submitted to the jury for its determination. The validity of these claims must be tested by a reference to the

statute creating the aqueduct commission and to the contract which was executed pursuant to the provisions of that act. The circumstances existing at the time of the passage of the act and which led to its passage, may be regarded for the purpose of furnishing something in the nature of a guide to its proper construction and interpretation. The same circumstances may also be regarded for the same purpose in the course of an examination of the provisions of the contract itself, should that duty become important or material. It was, of course, apparent that the city was about to be subjected to an enormous cost for the construction of an aqueduct, which was to convey the water a distance of some thirty miles for distribution through its different streets. It was a work which would necessarily continue for several years before the completed structure could be available for general use. Commissioners, engineers, inspectors, clerks and other employees would be necessary in the progress of the work. It would be an exhibition of nothing more than ordinary caution for the Legislature to provide restrictions upon the powers of these various individuals to represent the defendant and to render it liable for their acts. One would naturally look for a special and well-defined channel provided for by the act, in and by which such persons should be enabled to create any liability on the part of the defendant for their acts or omissions, and outside of which no such liability should exist. Obviously, if a liability to contractors themselves, arising outside of and beyond the contract, and in the course of its performance, were to be created by the errors or omissions of any one of the small army of officials who were to be employed for this work, from the aqueduct commissioners and their chief engineer down through the various grades of service, the cost of the undertaking would be incalculable, and defendant's liabilities to the contractors for work done pursuant to the terms of the contract would not be at all measured by the terms of the contract itself. The amount would be unknown until the Statute of Limitations had run against all possible claims which might be made subsequent to the completion of the work. A host of claims based upon allegations of errors or neglect or improper measurements or dishonest action on the part of the persons connected with the commission would be certain to arise, and disputes and almost endless litigation would be the inevitable result. Witnesses would, in the meantime, scatter, die, forget or disappear, while the claimants would remain alert, positive, intelligent and of good memories. The defendant would be placed at the greatest disadvantage in all such contests. Was it not the plain duty of the Legislature, while providing for the performance of and payment for a work of such large proportions,

to also provide a check or bar to any further liability to the contractor for the work than should be found in the contract itself? It seems to us plain that such was the duty of the Legislature, and after a perusal of the whole act, and particularly considering the thirtieth and thirty-third sections of the same, we think it equally plain that such duty was performed."

While the case last cited is to be distinguished upon the facts in that both the contract therein involved and the statute under which such contract was entered into, expressly limited the liability of the city, the same principle is applicable as is applicable in the case at bar, namely, that the alleged contract does not represent entirely the voluntary determination of the city but consists of certain obligations placed upon the city by the State and hence the city is not liable beyond the express monetary obligations undertaken under the contract. In other words, before the city can be held liable we must be able to find that the State has imposed such a liability for damage for nonfeasance upon the city.

Further supporting this conclusion is the history of the enforcement of the liability of the city under the subway contracts. Up to 1921 the litigation, in form, as well as in substance, was primarily between the contractor and the Public Service Commission or its successor. No suit could be maintained against the city under subway contracts even for moneys due under the contract, until a voucher had been obtained from the Public Service Commission or its successor. If such a voucher were refused, it was necessary to proceed by mandamus to procure the same. In *People ex rel. New York Dock Co.* v. *Delaney* (192 App. Div. 734, 737) Mr. Justice GREENBAUM, writing for the court, said: " If the procurement of the certified voucher is a condition precedent to payment by the city in the case of the refusal of the Commission to certify an adjudicated claim, it is difficult to understand why a certification is not also a condition precedent in the case of a disputed claim."

It may be noted that in such case also the court points out the distinction hereinbefore mentioned, between contracts voluntarily entered into by the city and contracts made on behalf of the city by the Public Service Commission, and also refers to the case of *Davidson* v. *Village of White Plains* (197 N. Y. 266), saying:

" The court also cited the case of *O'Brien* v. *Mayor, etc.* (139 N. Y. 543), in which the statute provided for the issue by the city of water stock to defray the expenses of the improvement, and directed the comptroller to make payments on the certification of the aqueduct commissioners. Says the court: ' The plaintiff received no such certificate. The point was not decided, but it was assumed in the opinion that if the certificate was unreasonably refused an action

would lie against the city.   In principle we think the present case is similar to that of *Fleming* v. *Village of Suspension Bridge* (92 N. Y. 368).   Though it was the duty of the plaintiff in the first instance to apply to the board of water commissioners to audit and certify his claim, upon their refusal to comply with the demand he was not restricted to proceedings against the commissioners by mandamus.   It may be questioned whether mandamus would lie in case the claim was in dispute.   However this may be, such refusal would give a right of action against the village itself.'

" The facts in that case differ from those in the instant case in a very important respect.   In that case the water commissioners of White Plains were a part of the local machinery of government. They were the immediate agents of the village.   Here the Public Service Commissioners are appointed by the Governor of the State of New York.   It is a State body independent of the municipal government, although charged with power to make contracts for the execution of which the municipality must pay, but it is not an agent of the city in the sense of being a part of the internal management of a municipality."

In 1921 there was passed chapter 608, amending the Rapid Transit Act by inserting in section 37 the following provision: " In case any person, firm or corporation shall claim to be entitled to any moneys on account of a contract entered into under the terms of this act, for the construction of any part of a municipal railroad and the said Commission shall fail, neglect or refuse to certify a proper or sufficient voucher for the payment of the moneys so claimed, a proper or sufficient voucher shall not be a condition precedent to the liability of the municipality, but an action may be brought directly against said municipality for the recovery of such moneys as such person, firm or corporation may be entitled to.   *   *   *."

The effect of the legislation of 1921 was not to alter the substance of the city's liability, but merely to dispense with the procuring of a voucher from the Public Service Commission or its successor as a condition precedent to the bringing of an action against the municipality.   Such action, however, could be brought only for claims for the payment of which the contractor would be entitled to receive a voucher from the Public Service Commission or its successor, that is, for " moneys on account of " the contract. This conclusion is strengthened when it is considered that the Public Service Commission or its successor could not be expected to certify a voucher for the payment of an unliquidated claim for damages for breach of contract.   Whether the city should or could be made liable still further by the Legislature, it is not now for

34

us to determine. Sufficient it is to say that so far the city has not been made further liable.

There is another ground also upon which the liability of the city was placed in *Degnon Contracting Co.* v. *City of New York (supra)*. This ground is also present in the case at bar. The contract provides in section No. 36 as follows:

" Section No. 36. The Engineer will prepare and furnish to the Contractor, from time to time as aforesaid, drawings amplifying such details of the contract drawings as may be necessary and drawings necessary to show the adjustment and reconstruction of all surface and subsurface structures wherever the reconstruction of the same is necessitated by the construction of the Railroad. These drawings must be strictly followed, unless local conditions should develop during construction, suggesting changes, when, with the approval of the Engineer, such changes may be permitted."

Also in article XXIV, as follows:

"Article XXIV. To prevent disputes and litigations, the Engineer shall in all cases determine the classification, amount, quality, acceptability and fitness of the several kinds of work and materials which are to be paid for under this contract, shall determine every question in relation to the Works and the construction thereof and shall determine every question which may arise relative to the fulfillment of this contract on the part of the Contractor. His determination and estimate shall be final and conclusive upon the Contractor, and in case any question touching this contract shall arise between the parties hereto, such determination and estimate shall be a condition precedent to the right of the Contractor to receive any money under this contract."

In considering similar sections in the contract in *Degnon Contracting Co.* v. *City of New York (supra)*, Mr. Justice Greenbaum said:

" It thus appears that the parties by express agreement have recognized that the engineer occupies a position over which the defendant has no control and that both the defendant and the plaintiff would in many instances be absolutely bound by the decision which the engineer may make, assuming, of course, that it is not made as the result of fraud or of bad faith. It is difficult to understand upon what theory the city may be held liable for the acts of the engineer in delaying the delivery of plans to plaintiff who knew or was presumed to know the provision of the statute and the contract, which conferred the power upon the engineer to prepare plans and furnish them to the contractor.

" It would seem to follow that it must have been understood by the parties that for any negligence or delay occasioned by the engineer in respect of a matter under his jurisdiction and over

which the city had no control whatever, the city could not be held responsible."

We are in accord with the above statement.

It is urged that article XLIII of the contract shows strongly that the city became liable because of the negligence of the engineer of the Public Service Commission. Such article provides as follows:

"Article XLIII. If the Contractor shall claim compensation for any damage sustained by reason of any act, neglect, fault or default of the City or the Commission or their agents, he shall, within ten (10) days after the sustaining of such damage, make a written statement to the Engineer of the nature of the damage sustained. On or before the fifteenth day of the month succeeding that in which any such damage shall have been sustained, the Contractor shall file with the Engineer an itemized statement of the details and amount of such damage, and unless such statement shall be made as thus required, his claim for compensation may in the discretion of the Commission be forfeited and invalidated and he shall not be entitled to payment on account of any such damage."

It is to be noted in the first place that the above provision is precautionary and that it does not attempt to provide a liability but merely a procedure to be followed before the possibility of liability can arise. In addition, the Public Service Commission, by the insertion of such a provision in the contract, could not create a liability against the city where none otherwise existed.

Hence the city is not liable upon this claim for damages based upon the delay in supplying plans by the engineers of the Public Service Commission and the claim should have been dismissed.

We pass now to the other items which go to make up the judgment and consider first the contractor's claim for damages alleged to have been sustained by the decision of the city not to proceed with the construction of a certain spur under Central Park as contemplated by the original plans.

In this connection article XV provides:

"Article XV. The Commission further reserves the right to alter, in any way it may deem necessary for the public interests, the drawings aforesaid, in part or altogether, at any time during the progress of the work, without constituting grounds for any claim by the Contractor for payment or allowance for damages or extra service other than as provided for items of the different classes of construction under the items of the Schedule or in Article XII."

Section 6, subdivision 2, of the Rapid Transit Act (Laws of 1891, chap. 4, as amd. by Laws of 1909, chap. 498) in part provides:

"2. * * * The Commission may, from time to time, alter

such detailed plans and specifications, but always so that the same shall, accord with the general plan of construction; but whenever a contract shall have been made for the construction of any railroad herein provided for, no such alteration shall be made by the Commission without the consent of the contractor and his sureties, except as liberty shall have been reserved in such contract by said board of rapid transit railroad commissioners or by the Commission for such alteration."

This spur relates to 187 feet, being less than a block, and there is nothing to show that this change would interfere with the general plan of construction, so that it would fall within the right reserved by the Commission " to alter, in any way it may deem necessary for the public interests, the drawings aforesaid, in part or altogether, * * * without constituting grounds for any claim by the Contractor * * *."

Furthermore, if the test heretofore herein laid down is sound, namely, that the city is not liable for the acts of the Public Service Commission, concerning which it has neither direction nor control, there then arises no liability on the part of the city for the elimination of this item by the Public Service Commission. In the same category as the act of an engineer of the Public Service Commission in failing to furnish plans in accordance with the contract, is the act of the same engineer or other employee in notifying the contractor that a portion of the work has been eliminated altogether, but not so as to interfere with the general plan of construction. It was error, therefore, to direct a verdict for the plaintiff on this item and the claim should have been dismissed.

Taking up now the claim for excess cement, this involved merely a construction of the contract, where there was room for an honest difference of opinion, and hence the contractor was justified in complying with the instructions of the engineer. (*Borough Const. Co.* v. *City of New York*, 200 N. Y. 149.) This was pursuant to article XXV of the contract, which provides, in part: " The Engineer shall make all necessary explanations as to the meaning and intention of the specifications * * *." In *Borough Const. Co.* v. *City of New York* (*supra*) one of the provisions of the contract involved in the controversy required that when the work to be constructed " is all or partly below the city datum (meaning high water) Portland cement must be used when directed by the engineer." Claiming to act under this clause, the engineer in charge required the contractor to lay in Portland cement not only that portion of the sewer located below the city datum line, but also that portion which was above said line.

In allowing a recovery the court there said (p. 153):

" I regard it as settled that * * * within certain limits a contractor who is ordered by the proper representatives of the municipality to furnish materials or do work as covered by his contract which the former thinks are not called for by such contract may under protest do as directed and subsequently recover damages because he has been so required even though it should turn out that the contractor was right and that the official had no right to call on him to furnish such materials and do such labor. Decisions of this court have so conclusively established the principle that under such circumstances the contractor may treat the conduct of the municipality acting through its representative as a breach of contract and recover damages, that it is only necessary to summarize these without argument. * * *

" The demand of the appellant's engineer that respondent should use Portland cement in laying both the portions of the sewer above the city datum line as well as those below, finds some support in the wording of the clause of the contract relating to that subject. In fact a literal interpretation of the clause would sustain the demand of the engineer, and it is only by tempering the letter of the provision by the spirit of its purpose that we reach the conclusion that it did not require the extra Portland cement demanded by the engineer. Under these circumstances the court could well say, as it has, that the contractor was justified in following the instructions of the engineer, although protesting against the justice thereof, rather than in refusing to comply with those requirements and hazarding a breach of his contract involving $800,000 and that its supply of the extra material furnished a basis for recovery in this kind of an action."

This claim is founded upon the order to the contractor by the engineer to mix the cement used in accordance with the requirements of section 120 of the contract. This section, however, is included under the general subdivision of " mortar." It reads as follows:

" Section No. 120. For purposes of mixture, three hundred and seventy-five (375) pounds of Portland cement shall be estimated at three and one-half ($3\frac{1}{2}$) cubic feet of volume. The proportions for brick and stone masonry shall be one (1) part cement to two (2) parts sand; for pointing, one (1) part cement and one (1) part sand; for concrete masonry, as specified under the head of concrete; and for other classes of work, as directed by the Engineer."

It thus appears that section 120 provides for the composition of mortar to be used in masonry and that it expressly refers any questions in regard to concrete to the heading denominated " concrete," *i. e.,* " as specified under the head of concrete." Section 133 refers

to concrete and prescribes a mixture as provided by sections 138 and 139, and not as provided by section 120. As there was no dispute concerning the additional amount which the contractor was thus required to expend, and as the language of the contract was sufficient to permit the contractor to rely upon the orders of the engineer, the direction of a verdict for the plaintiff on this item was proper.

We next come to the claim based on the pumping of sewage. The contract called for the reconstructing of two sewers in Seventh avenue. These sewers were to connect with a new outlet to be constructed by the city. The plaintiff completed its work as provided for by the contract, but the city's new outlet was not ready until sixteen months later, and during this period the plaintiff was required to pump the sewage into the old sewer. This work clearly was not contemplated by the contract as work to be performed under the specifications, but comes within article XII, providing for unexpected work on a cost plus basis. There was no dispute as to the amount, and both sides having moved for a directed verdict, a direction was properly made on behalf of the plaintiff.

In so far as concerns the claim for damages caused by the alleged deliberate and intentional false estimate of the quantities of the work to be done, there was error in directing a verdict for the plaintiff. The defendant moved to go to the jury on the question of fraudulent intent. The fact is that to the estimates made by the engineers of the Commission as to the quantities of work to be performed, there was arbitrarily added fifteen per cent. Whether this was a reasonable amount under the circumstances or whether it was done with deliberate intent to mislead the plaintiff, would be a question of fact. The question of whether it was intentional or whether it was reasonably within the provisions of the contract is material, since in the latter event the plaintiff would be barred from any claim in view of the provision of the contract that all estimates are approximate merely and that no claim should be made for any discrepancies between the estimates contained in the proposal and the actual quantities of work performed. There is, however, an additional objection that bars any recovery on this claim as a matter of law, and that is that this item sounds in tort and not in contract. It, therefore, comes squarely within the holding in the *Degnon Case (supra)*, and the cases therein cited, that the city would not be liable for the torts of the agents of the Rapid Transit Commission, as well as within the principle above referred to, namely, that the city is liable only for amounts becoming due and payable by performance of the contract. This item, therefore, should be dismissed.

In so far as the defendant's counterclaim is concerned, this necessarily fell with the finding of the jury that the work was delayed to the prejudice of the plaintiff by the failure of the Public Service Commission to furnish plans and specifications under the contract, and entitled the plaintiff to a verdict for the retained percentages, which the defendant was holding against its claim for liquidated damages.

In view of the outcome of this appeal, the additional allowances of $2,000 granted to the plaintiffs should be disallowed.

There is also presented a question as to the date from which interest should be allowed upon the claim of the contractor. It is contended by the defendant that since section 261 of the Greater New York Charter (Laws of 1901, chap. 466, as amd. by Laws of 1912, chap. 452) provides that no action shall be prosecuted or maintained against the city of New York until the expiration of thirty days after the demand or claim has been presented to the comptroller, interest begins to run thirty days from the date of such demand. Said provision of the charter, however, bears only on the right to sue and not upon the question of interest. It is evident that if the claim should have been paid upon demand, the city should not be permitted to profit by a wrongful refusal to pay the same. It is well settled that the date from which interest begins to run upon claims against the city of New York is the date of demand for payment of such claims. The reason for this is set forth in *O' Keeffe* v. *City of New York* (176 N. Y. 297), where it is said:

" The only question brought up for review is as to the time that interest should be allowed upon the plaintiff's claim. It would be exceedingly difficult for the comptroller of a large city to look up claimants or their heirs or assigns and tender payment as their claims matured and became due. If interest at six per cent is chargeable from the date of the maturity of claims many persons might refrain from presenting them during the period permitted by the Statute of Limitations. The allowing of interest from such maturity would afford a safe and profitable investment which might become very attractive to many and induce them to buy up claims for the purpose of holding them for the interest. This would impose a burden upon the city that it ought not to bear.

" The better and more just way is to follow the rule laid down in *Taylor* v. *Mayor, etc., of N. Y.* (67 N. Y. 87, 94) and *Sweeny* v. *City of New York* (173 N. Y. 414) and award interest on claims only after the demand of payment has been made."

It follows, therefore, that the allowance of interest was proper in so far as concerns the item recovered for the pumping of sewage.

Interest, however, was improperly allowed upon the recovery of retained percentages prior to the date of demand. These percentages were retained pursuant to article XXXIII of the contract between the parties, which provides: " Such retained percentages shall be held as further security for the faithful performance by the Contractor of all the conditions, covenants and requirements specified and provided for in this contract." The contract thus by its very terms gave the right to hold these percentages. It follows, therefore, that until a demand was made at a time when these percentages could be received pursuant to the terms of the contract, no interest would accrue.

In passing, it might be said that a reversal on the main question of damages would, in any event, have been necessary, owing to the erroneous exclusion of the final certificate offered by the defendant, and the improper admission in evidence of the payrolls of the contractor because proof necessary to their admission was lacking.

It follows that the judgment appealed from should be reversed, without costs in so far as concerns the item of damages claimed for delay in furnishing plans; the item of damages claimed because of the decision not to construct the spur under Central Park; the item of damages claimed on account of alleged false estimates of quantities of work to be done, and judgment directed for the defendant upon said items, with costs.

In so far as concerns the items of the excess cement, the pumping of sewage, the retained percentages and the dismissal of the counterclaim, the judgment should be modified so as to allow interest on the item of retained percentages only from the date of demand, and as so modified affirmed, without costs.

Clarke, P. J., and Martin, J., concur; Merrell, J., dissents.

Judgment reversed, without costs, in so far as concerns item of damages claimed for delay in furnishing plans; the item of damages claimed because of the decision not to construct spur under Central Park; the item of damages claimed on account of alleged false estimates of quantities of work to be done, and judgment directed for defendant upon said items, with costs. In so far as concerns items of the excess cement, the pumping of sewage, the retained percentages and the dismissal of the counterclaim, judgment modified so as to allow interest on the item of retained percentages only from the date of demand, and as so modified affirmed, without costs. Settle order on notice.