CHARLES PETERSON, Appellant, *v.* THE CITY OF NEW YORK, Respondent.

Contract — construction of contract for excavation of shaft and tunnel — held, that, under terms of contract, the contractor cannot recover for alleged extra work but may recover for changes in work directed by engineer in charge thereof.

1. Plaintiff's assignor entered into a contract with defendant to excavate a tunnel in rock under the Harlem river and a shaft connecting therewith. The contractor agreed, among other things, "that neither the parties of the first part, nor the aqueduct commissioners, or any of them, are to be held responsible that any of the said estimated quantities shall be found even approximately correct in the construction of the work; that he is satisfied with, and will at no time dispute, the said estimated quantities as a means of comparing the bids aforesaid, and that he will make no claim for anticipated profits, or for loss of profit, because of a difference between the quantities of the various classes of work actually done, or of materials actually delivered, and the said estimated quantities; and the contractor hereby undertakes and agrees that he will complete the entire work to the satisfaction of the aqueduct commissioners, and in accordance with the specifications and the plans herein mentioned, at the prices herein agreed upon and fixed therefor, except for such extra work;" and further that if the rock was found unsatisfactory by a certain test drift provided for "the tunnel is to be started at a lower elevation, as shown in dotted lines on sheets 45 and 46, *or at any other grade or grades that the engineer may designate.*" *Held,* that the direction of the engineer to excavate 161 feet deeper in order to find suitable rock in which to construct the tunnel was but carrying out the provision of the contract. It was not, therefore, the performance of extra work but of work included in and provided for by the contract.

2. The contractor claims a breach of the contract as to lining a portion of the shaft and that by direction of the engineer he ordered iron for lining the tunnel, a matter which was in the discretion of the engineer; that thereafter the latter order was countermanded and plaintiff asks damages therefor, including loss of profits. The plaintiff also complains of a breach of contract relative to dumping grounds. *Held,* that he is entitled to recover such

damages as he may be able to show that he has sustained by such violations of his rights under the contract.

*Peterson* v. *City of New York*, 146 App. Div. 879, reversed.

(Argued April 3, 1912; decided April 30, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 18, 1911, affirming a judgment in favor of defendant entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*L. Laflin Kellogg, Alfred C. Petté* and *Philip M. Brett* for appellant. For the damages occasioned by the breach of the contract in preventing the plaintiff from lining the tunnel and part of the shaft with iron, as provided in the contract, the defendant clearly is liable. (*Masterson* v. *Mayor*, 7 Hill, 61; *Jones* v. *Judd*, 4 N. Y. 411; *Clarke* v. *Mayor, etc.*, 4 N. Y. 338; *Devlin* v. *Mayor, etc.*, 63 N. Y. 8; *McMaster* v. *State*, 108 N. Y. 542; *Danolds* v. *State*, 89 N. Y. 36; *Byron* v. *Low*, 109 N. Y. 291; *Gearty* v. *Mayor, etc.*, 171 N. Y. 61; *B. C. Co.* v. *City of New York*, 200 N. Y. 149.) The action of the defendant in compelling the plaintiff, against his protest, to sink shaft 25 and excavate the tunnel under the Harlem river 161 feet below the lowest point called for by the contract and shown on the plans, and which amounted to a fundamental change of construction, also constituted a breach of the contract, and for the damages occasioned thereby the defendant also is liable. (*Bissel* v. *Vil. of Larchmont*, 57 App. Div. 61; *Nat. Cont. Co.* v. *H. R. W. P. Co.*, 192 N. Y. 209; *McMaster* v. *State*, 108 N. Y. 542; *Borough Const. Co.* v. *City of New York*, 200 N. Y. 149; *Dunning* v. *County of Orange*, 139 App. Div. 255; *Salt Lake City* v. *Smith*, 104 Fed. Rep. 462; *Wood* v. *City of Fort Wayne*, 119 U. S. 416; *County of Cook* v. *Harms*, 108 Ill. 151.)

*Archibald R. Watson, Corporation Counsel (Terence Farley* and *Francis Martin* of counsel), for respondent. There is no legal liability on the part of the city of New York for the acts set forth in the complaint or proven on the trial. (*O'Brien & Clark* v. *Mayor, etc.,* 139 N. Y. 543.) There were no breaches of the contract proven by the defendant. (*Borough Const. Co.* v. *City of New York,* 200 N. Y. 149.)

HAIGHT, J. This action was brought to recover damages alleged to have resulted to the plaintiff from changes in work specified in and required by a contract.

(1) By being required to construct shaft
    known as No. 25, and the tunnel under
    the Harlem river 161 feet below the points
    designated upon the original plans ....... $101,934 55
(2) Damages occasioned by omission of an
    iron lining from the tunnel under the
    Harlem river and 228 feet of aqueduct
    shaft in shaft 25, as provided for in the
    contract......,........................     73,034 40
(3) Damages suffered by reason of change
    of dumping ground....................      4,541 00
                                             _____
    Total ..................... ..........  $179,509 95

On or about the 2d day of February, 1886, the mayor, aldermen and commonalty of the city of New York, acting by and through the aqueduct commissioners, by virtue of the power vested in them by chapter 490 of the Laws of 1883, entered into a contract with John O'Brien and Heman Clark, composing the firm of O'Brien & Clark, for the building of section 12 of the new Croton aqueduct in the twenty-fourth and twelfth wards, across and under the Harlem river, of the city of New York. This contract was subsequently assigned by O'Brien & Clark to the plaintiff, with the consent of the aqueduct

commissioners, who performed the work under the contract. The work called for by the provisions of the contract extended from a point at or near station 1590 + 63 in the vicinity of shaft 24 on the easterly side of the Harlem river, across and under the river to a point near station 1510 at or about 178th street and 10th avenue. It consisted of a tunnel in rock under the river and the excavating of shaft 25, 33 feet by 16 feet 6 inches running from the surface to datum or zero at high-water mark about 84 feet, meeting the tunnel in the rock and extending according to the plans of an extreme depth of 181 feet below datum to a possible extreme depth of 265 feet from the surface, connecting with the tunnel under the Harlem river according to the plans shown upon map or sheets No. 45.

It appears that the plaintiff entered upon the performance of the work called for by the contract and excavated shaft 25 to the depth specified upon the map, and that then he started a drift under the river, by the direction of the engineer, as a test for the purpose of determining the character of the rock, and then finding it not satis-factory, he was directed by the engineer to excavate the shaft deeper until suitable rock was obtained for the construction of the tunnel, and that in doing so he had to excavate 161 feet deeper, thus making the work of excavating the shaft and the tunnel more difficult and expensive, for which he seeks to recover damages in this case. Under the contract he was to receive a fixed sum per cubic yard or linear foot, dependent upon the character of the work to be performed, and no question is raised but that he was paid the sum specified. We can readily see that the great depth which he had to excavate the rock before finding that which was suitable for the construction of the tunnel, rendered the work more difficult and expensive.

Under the provisions of the contract it is provided that "The work to be done under this contract being almost

wholly underground, it is impossible now to estimate with accuracy the quantities of the various classes of work to be done and materials to be furnished. It is, therefore, expressly understood and mutually agreed that the estimated quantities stated in the advertisement attached thereto are only for the purpose of comparing, on a uniform basis, the bids offered for the work under this contract; and the contractor further agrees that neither the parties of the first part, nor the aqueduct commissioners, or any of them, are to be held responsible that any of the said estimated quantities shall be found even approximately correct in the construction of the work; that he is satisfied with, and will at no time dispute, the said estimated quantities as a means of comparing the bids aforesaid, and that he will make no claim for anticipated profits, or for loss of profit, because of a difference between the quantities of the various classes of work actually done, or of materials actually delivered, and the said estimated quantities; and the contractor hereby undertakes and agrees that he will complete the entire work to the satisfaction of the aqueduct commissioners, and in accordance with the specifications and the plans herein mentioned, at the prices herein agreed upon and fixed therefor; except for such extra work, for the performance of which written orders may be received as hereinafter specified." And again it is provided in the contract: " As the result of the borings leave some doubt in regard to the compactness and quality of some of the rock under the Harlem river, a preliminary tunnel, or test drift (Sheets 45 and 46) is to be driven from Shaft 25 to such a point as the engineer shall designate; if the character of the rock is satisfactory to him the test drift is to be enlarged to the proper size for the construction of the Aqueduct. If, on the contrary, the rock is found unsatisfactory, the test drift is to be abandoned, Shaft 25 is to be deepened, and the tunnel is to be started at a lower elevation, as shown in dotted lines on Sheets 45 and

46, *or at any other grade or grades that the engineer may designate.*"

It is thus apparent that the plans shown upon sheet 45 are not to be taken as accurate as to the depth of the tunnel, but are to be considered only as estimated for the purpose of comparing, on a uniform basis, the bids offered for the work, and that neither the city nor the aqueduct commissioners are to be held responsible by the contractor, even though quantities estimated are not even approximately correct; and that the excavating of shaft 25 lower to the dotted lines shown upon the map is only estimated, for the contract follows with the further provision, " or at any other grade or grades that the engineer may designate." It follows, therefore, that the direction of the engineer to excavate 161 feet deeper in order to find suitable rock in which to construct the tunnel was but carrying out the provision of the contract. It was not, therefore, the performance of extra work but of work included in and provided for by the contract. In the case of *O'Brien* v. *Mayor, etc., of N. Y.* (139 N. Y. 543), this question was considered in an elaborate opinion by PECKHAM, J., who reached the conclusion that no recovery could be had. We are, therefore, of the opinion that the plaintiff's claim for damages for excavating the shaft 161 feet below the point designated on the map cannot be allowed.

Under the provisions of the contract the plaintiff was to furnish the cast iron called for, and it was to be used for the overflow from shaft 25, for the lining of the 36-inch masonry well in shaft 25 and " also for lining a portion of the tunnel under Harlem river, as shown on the plans if during construction the engineer so orders." It thus appears that the contract for the lining of shaft 25 with iron was absolute, but that the lining of the tunnel under the river was subject to the orders of the engineer. Under the findings of the referee it appears that under the original plans the lining with iron was shown

in shaft 25 and in the tunnel under the river, and during the progress of the work the plaintiff received express orders from the engineer to line shaft 25 and the entire tunnel with iron and that he should make his arrangements to procure the necessary material in order to carry out the engineer's directions; that thereupon the plaintiff did make various inquiries in the iron market as to prices and finally entered into a contract with the McNeil Pipe and Foundry Company to supply all of the cast iron called for in the contract. It further appears that after the plaintiff had entered into the contract for the iron for lining, the engineer instructed the plaintiff to omit the iron lining in the tunnel and in shaft 25 for a distance of 228 feet from the bottom of the shaft and to substitute in place thereof a system of overhead and lateral drains with automatic valves. This was a new plan devised by the chief engineer, who brought it to the attention of the aqueduct commissioners and received orders for its adoption. While this new plan saved the city the expenses of lining with iron, which amounted to a large sum, it operated to prevent the plaintiff from performing that branch of his contract, thus depriving him of the profits which he would have made had he been permitted to perform it. We do not think that this claim is covered by any of the provisions of the contract. Neither has its validity been questioned in the *O'Brien Case* (*supra*). Under the finding as made it appears to us that there was a breach of the contract on the part of the aqueduct commissioners in so far as the lining of the shaft is concerned. As to the lining of the tunnel the situation is somewhat different, for the contract made was subject to the orders of the engineer. But in this case it is shown that the engineer had exercised his discretion in the matter and had given the plaintiff orders to procure the material for the lining of the tunnel as well. And if it really should appear that the plaintiff had acted upon such direction and had really made a contract by which he was bound to take the iron for the lin-

ing of the tunnel as well as the shaft, we see no reason why he should not be awarded damages therefor, as well as for the breach of the absolute provision of the contract pertaining to the lining of the shaft.

Under the provision of the contract a dumping ground was to be designated, upon which the plaintiff could dump the material excavated from the shaft and the tunnel. This was done by the chief engineer. Thereupon the plaintiff constructed a trestle work with car tracks, and installed machinery for the operation of cars thereon, and for some time used the same for dumping the material excavated. But finally he was stopped, and after considerable delay another place was designated, and thereby his trestle and machinery installed was rendered useless and had to be abandoned. This we think was a violation of his rights under the contract, and that he is entitled to recover the damages he has sustained.

The judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., GRAY, VANN, WERNER, WILLARD BARTLETT and CHASE, JJ., concur.

Judgment reversed, etc.