LITCHFIELD CONSTRUCTION COMPANY et al., Appellants,
*v.* THE CITY OF NEW YORK, Respondent.

New York city — contract — Rapid Transit Act — no ground for application of special rules of construction to contract made by Public Service Commission under Rapid Transit Act — city of New York liable to contractor for damages caused by delay of engineer of Commission in performing his duties — sufficiency of evidence to sustain finding that plaintiff is entitled to recover for increased cost of work — interest on percentages of moneys earned but retained by city improperly allowed — evidence of payrolls of contractor properly received — loss from elimination of work provided for in contract properly allowed contractor — no damages from over-estimation where contractor was warned estimated quantities were approximate.

1. The Rapid Transit Act (L. 1891, ch. 4) does not compel the city of New York to construct rapid transit railroads at the expense of the city for the benefit of the people of the State.   It merely regulates the manner in which such railroads shall be laid out and constructed after the city or the voters of the city have decided that such railroads shall be constructed.   Though the contract must be

## 252 LITCHFIELD CONST. CO. v. CITY OF NEW YORK.

made by State officers acting for and in behalf of the city, yet city officers must approve both its form and substance before it becomes effective and it is in real sense the voluntary contract of the city. No ground exists for applying special rules of construction to the provisions of such contract, and breach of obligation created by its terms, fairly construed, gives rise to liability for resultant damages.

2. In an action, therefore, against the city of New York to recover, among other things, for breach of a contract for construction of portions of a subway railroad, a decision, as matter of law, that no liability rests upon the city for damages caused to the contractor by delay of the engineer of the Public Service Commission in carrying out his duties for the reason that the engineer acted in the performance of his duties as an officer of the State and not as an agent of the city, is erroneous. The city is liable for failure of the engineer to act with promptness because the city undertook by its contract that the engineer should perform his duties in accordance with that contract.

3. The Appellate Division has not passed upon the question whether the evidence in this case sustains the finding that delay by the engineer in furnishing drawings and approving plans has caused damage to the plaintiff in the sum of $813,000. An examination of the record, however, shows that upon the entire evidence the jury was justified in finding that the engineer failed almost continuously to show promptitude of action in furnishing drawings which were reasonably and necessarily required in view of the short time allowed by the contract for the completion of the work and that this lack of promptitude on the part of the engineer was the sole cause of the failure of the contractor to obtain structural steel and that failure to obtain structural steel in turn caused the contractor to use a method of construction which was more expensive than the method that would have been used if from the beginning steel had been available for erection as the excavation progressed. The evidence further shows that, in spite of all difficulties and other causes of delay, the work would have been completed in time if the supply of structural steel had been steadily available. The jury has so found and other evidence did not require a contrary inference. Its verdict, therefore, in favor of plaintiff, for the increased cost of the work should not have been set aside.

4. Interest on percentages of moneys earned which the city retained under the provisions of the contract, was, however, improperly allowed. It cannot be said that delay in completing the work caused the contractor to lose interest on moneys that would have been paid upon earlier completion when those moneys would have been earned only by expenditure of further capital.

5. A contention that even if the evidence is sufficient to sustain the finding of damages in favor of the plaintiffs, a new trial is necessary because of the improper admission in evidence of the payrolls of the contractor, cannot be sustained. There is no question that foundation for the introduction in evidence of the payrolls was sufficiently laid according to the strictest and most technical rules of evidence, in so far as they were made up from timesheets for workers during the day. It is said that without the oral testimony of the men who checked the time of the workers on the night shifts, the payrolls were inadmissible. Testimony of the timekeepers is sufficient to make the entries admissible as evidence that each man who received pay for work was actually working on the day or night for which he was paid, and tends to show that with possibly unsubstantial exceptions the labor which was paid for was performed. The plaintiffs were not required to go further.

6. The trial court properly directed a verdict for the amount of loss suffered by the contractor by the elimination from the contract of a spur track described therein and a holding by the Appellate Division that the contractor is not entitled to these damages because the contract provided that the Commission reserved the right " to alter, in any way it may deem necessary for the public interest, the drawings aforesaid, in part or altogether, * * * without constituting grounds for any claim by the contractor," is erroneous. Changes in the drawings might alter the manner in which such work was to be performed, but changes in the drawings could not change the description of the work itself as contained in the contract.

7. Plaintiffs may not recover any damages caused to the contractor by over-estimation where it was warned that the estimated quantities were " approximate and only for the purpose of comparing on a uniform basis the bids offered for the work."

*Litchfield Construction Co.* v. *City of New York,* 216 App. Div. 517, modified.

(Argued November 17, 1926; decided December 31, 1926.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 13, 1926, modifying and affirming as modified a judgment in favor of plaintiff entered upon a verdict partly directed by the court and upon a dismissal of the counterclaim.

*Edward M. Grout* and *Dean Potter* for appellants. The city voluntarily made this contract by the Public

Service Commission as its agent, after the State had created the Commission to serve as said agent if the city approved, and the city voluntarily undertook that the engineer of the Commission would furnish the contractor with "working drawings amplifying the contract, the first within thirty days and the remainder as reasonably and necessarily required by the contractor," and· is liable for the engineer's breach of the city's undertaking. (*Bailey* v. *Mayor*, 3 Hill, 531; *Lloyd* v. *City*, 5 N. Y. 374; *Maximilian* v. *Mayor*, 62 N. Y. 160; *Oakes Mfg. Co.* v. *City*, 206 N. Y. 221; *Canavan* v. *City of Mechanicville* 229 N. Y. 473; *Matter of R. T. R. R. Comrs.*, 197 N. Y. 81; *Sun Printing & Publishing Assn.* v. *Mayor*, 152 N. Y. 257; *People ex rel. Dunkirk, etc.*, v. *Batchellor*, 53 N. Y. 128; *Admiral Realty Co.* v. *City*, 206 N. Y. 110; *Crowley* v. *Lewis*, 239 N. Y. 264.) The State, in dealing with its creatures, the cities, towns, counties and other political subdivisions of the State, may create agencies for such creatures of the State through which they must act if they act at all. (*Bailey* v. *Mayor, etc.*, 3 Hill, 531; *Matter of Rapid Transit R. R. Comrs.*, 197 N. Y. 81; *Barnes* v. *District of Columbia*, 91 U. S. 552; *Mayor, etc.*, v. *Tenth National Bank*, 111 N. Y. 446; *Coyne* v. *Town of Greenburgh*, 194 App. Div. 861; *Walsh* v. *Mayor*, 107 N. Y. 220; *American Pipe & Construction Co.* v. *Westchester County*, 225 Fed. Rep. 947; *Horton* v. *Andrews*, 191 N. Y. 231; *Peterson* v. *City of New York*, 205 N. Y. 323.) The city is liable for the engineer's breach of its undertaking to furnish working drawings. (*Del Genovese* v. *Third Ave. R. R. Co.*, 13 App. Div. 412; 162 N. Y. 614; *McGovern* v. *City*, 185 App. Div. 609; *Borough Const. Co.* v. *City*, 200 N. Y. 149; *Delafield* v. *Village of Westfield*, 41 App. Div. 24; 169 N. Y. 582; *Johnson* v. *City of New York*, 191 App. Div. 205; 231 N. Y. 564; *Barnum* v. *Williams*, 115 App. Div. 694; *Mansfield* v. *N. Y. C. & H. R. R. R. Co.*, 102 N. Y. 205.) Whether or not the city could control the Public Service Commission or its engineer is

immaterial. This action depends neither upon the doctrine of *respondeat superior,* nor merely upon agency by the engineer for the city. It depends really and finally upon the city's voluntary and express covenant that the engineer would furnish the drawings as required by the contractor. (*Miller* v. *United States,* 49 U. S. Court of Claims, 276; *Del Genovese* v. *Third Ave. R. R. Co.,* 13 App. Div. 412; 162 N. Y. 614; *People ex rel. Cranford* v. *Willcox,* 153 App. Div. 759; 207 N. Y. 743; *People ex rel. R. T. S. Const. Co.* v. *Craven,* 210 N. Y. 443; *People ex rel. N. Y. Dock Co.* v. *Delaney,* 192 App. Div. 734.) It was error for the Appellate Division to reverse plaintiffs' recovery of the damages amounting to $16,813.65, sustained by being prevented from performing a part of the contract work, to wit, the spur running into Central Park, and to direct judgment for the defendant thereon. (*Peterson* v. *City,* 205 N. Y. 323; *Kinser Construction Co.* v. *State,* 204 N. Y. 381.) It was error for the Appellate Division to reverse plaintiffs' recovery of the damages, amounting to $40,296.05, caused by the false estimation, in breach of the representation or warranty of the quantities of the work to be done, and to direct judgment for the defendant thereon. (*Pilkington Co., Inc.,* v. *City,* 211 App. Div. 558; *Jackson* v. *State,* 210 App. Div. 115; 241 N. Y. 563; *Hollerbach* v. *United States,* 233 U. S. 165; *United States* v. *Atlantic Dredging Co.,* 253 U. S. 1; *McGovern* v. *City,* 202 App. Div. 317; 235 N. Y. 275.) The Appellate Division erred in holding that the item of $11,094.18, interest included in the verdict of $813,000, was improper. (*Taylor* v. *Mayor,* 67 N. Y. 87; *Sweeney* v. *City,* 173 N. Y. 414; *O' Keefe* v. *City,* 176 N. Y. 297; *Smith* v. *Bd. of Education,* 208 N. Y. 84; *Blackwell* v. *Finlay,* 233 N. Y. 361; *Griffin* v. *Colver,* 16 N. Y. 489; *Mortimer* v. *Otto,* 206 N. Y. 89; *Roebling's Sons Co.* v. *City,* 110 App. Div. 366; *Leopold* v. *City,* 184 App. Div. 244; *Bradley* v. *McDonald,* 218 N. Y. 351; *Keenan & Sons, Inc.,* v. *Johns-Manville Co.,* 184 App. Div. 98.)

**256** Litchfield Const. Co. *v.* City of New York.

[244 N. Y. 251] Points of counsel. [Dec.,

*Louis S. Carpenier, Albert J. Kenyon* and *James L. Quackenbush* for Rapid Transit Subway Construction Company, *amicus curiæ.* The Public Service Commission for the first district, and its engineers, acted as the agents of the city in the execution of and carrying out the provisions of the dual contracts, executed March 19, 1913, and also the contract entered into May 21, 1915, between the city of New York and Litchfield Construction Company; and the delay on the part of the engineers, whereby the city failed to supply plans and working drawings within the times fixed by the contract, was the default of the agents of the city, chargeable to it, and was a breach of contract on the part of the city, for which the city is liable in damages to the plaintiffs. (*Sun Publishing Assn.* v. *Mayor*, 152 N. Y. 257; *Admiral Realty Co.* v. *City of New York*, 206 N. Y. 110; *City of New York* v. *Interborough Rapid Transit Co.*, 236 N. Y. 557; *Matter of Craig*, 233 N. Y. 544; *Matter of McAneny* v. *Board of Estimate & Apportionment*, 232 N. Y. 377; *Schieffelin* v. *Hylan*, 227 N. Y. 593; *McGovern* v. *City of New York*, 234 N. Y. 377; *Bakerman* v. *City of New York*, 230 N. Y. 554; *Wines* v. *Mayor, etc.*, 70 N. Y. 613; *Dunham* v. *Townshend*, 118 N. Y. 281; *Matter of Cooper*, 93 N. Y. 507; *Stemmler* v. *Mayor, etc.*, 179 N. Y. 473; *Matter of City of New York* [*Newport Ave.*], 218 N. Y. 274.)

*George P. Nicholson*, Corporation Counsel (*John F. O'Brien, Willard S. Allen* and *William E. C. Mayer* of counsel), for respondent. The Public Service Commission and its engineer have been created by statute and by the contract at bar as agents of the city only to effect the public city purpose decreed by the sovereign power. In the absence of statute, neither the Commission nor its engineer was agent of the city to the extent of imposing liability upon the city for a breach of contract, if any such occurred, caused by delay, negligence or any other tort or no nfeasance of the Commission or its engineer. (*Sun*

*Pub. Assn.* v. *Mayor,* 8 App. Div. 230; 152 N. Y. 257; *Gubner* v. *McClellan,* 130 App. Div. 716; *Admiral Realty Co.* v. *City of New York,* 206 N. Y. 110; *Matter of McAneny,* 232 N. Y. 377; *Matter of Continental G. Corp.,* 240 N. Y. 354; *People* v. *Crane,* 214 N. Y. 154; *McGovern* v. *City of New York,* 185 App. Div. 609; *Heim* v. *McCall,* 239 U. S. 175; *O'Brien* v. *City of New York,* 182 App. Div. 810; *People ex rel. N. Y. Dock Co.* v. *Delaney,* 192 App. Div. 734; *Degnon Cont. Co.* v. *City of New York,* 202 App. Div. 390; *Mahoney* v. *Boston,* 171 Mass. 427; *Murphy* v. *Nawn Cont. Co.,* 223 Mass. 404; *McGovern* v. *Boston,* 229 Mass. 394.)   The Public Service Commission and its engineer, if agents of either party in the commission of a breach of contract arising from neglect, delay or other form of misfeasance or nonfeasance, were agents of the contractor in no lesser degree than they were agents of the city. (*Degnon Cont. Co.* v. *City of New York,* 202 App. Div. 390; *Matter of McAneny* v. *Bd. of Estimate, etc.,* 232 N. Y. 377; *Heim* v. *McCall,* 239 U. S. 175.)   The trial court committed reversible error in admitting the contractor's payrolls in evidence without proof of the prerequisites. (*Collins* v. *Carlin,* 106 App. Div. 204; *Mayor* v. *Second Avenue R. R. Co.,* 102 N. Y. 572; *Pneumatic Signal Co.* v. *Pac. Ry. Co.,* 216 N. Y. 374.)   Appellants were not entitled to recover for the elimination of the stub track construction in Central Park. (*Admiral Realty Co.* v. *Gaynor,* 147 App. Div. 719.)   The defendant was not liable to the plaintiffs for alleged overestimation of the quantities. (*Cameron-Hawn Realty Co.* v. *City of Albany,* 207 N. Y. 377; *Allen* v. *City of Oneida,* 210 N. Y. 496; *Dunn* v. *City of New York,* 205 N. Y. 343; *Snare & Triest Co.* v. *City of New York,* 191 App. Div. 184; 233 N. Y. 528; *Leary* v. *City of Watervliet,* 222 N. Y. 337; *Matter of Sempler* v. *Duffey,* 227 N. Y. 151.)   Plaintiffs are not entitled to interest prior to the date when they filed their claim with the comptroller. (*Ryan* v. *City of New York,* 179 App. Div. 181; *O'Keeffe* v. *City of*

17

*New York*, 176 N. Y. 297; *Smith* v. *Board of Education*, 208 N. Y. 84; *Sweeney* v. *City of New York*, 173 N. Y. 414; *Taylor* v. *Mayor, etc.*, 67 N. Y. 87; *Dock Contractor Co.* v. *City of New York*, 296 Fed. Rep. 272.)

LEHMAN, J. The Litchfield Construction Company entered into a contract in May, 1915, for the construction of certain sections of a subway or underground railroad, part of a route adopted by Rapid Transit Railway Commissioners for the city of New York in the year 1905. The contract called for the completion of the work sufficient to permit railroad operation by March 26, 1917, and the entire completion of the work by July 26, 1917. In fact, the work was ready for railroad operation only in March, 1919, and was entirely completed only in May, 1919. After completion of the work the plaintiffs brought this action to recover moneys which they claim are due to the Litchfield Construction Company from the city of New York under the provisions of the contract, and also to recover damages which they allege have been caused by breach of contract on the part of the city.

The plaintiffs' claims embrace numerous separate items. The trial judge directed a verdict in their favor as to some of the items where there was no dispute as to the facts. Where claim rested upon disputed facts, the jury found in favor of the plaintiffs. Upon appeal to the Appellate Division the judgment was reversed as to some of the plaintiffs' claims and affirmed as to others. Since the defendant has not appealed from the judgment we may review only the claims of the plaintiffs for which redress has been denied. The plaintiffs claim that delay in completing the railroad was due solely to the failure of the engineer of the Public Service Commission to perform at stipulated times the duties imposed upon him under the terms of the contract. For consequent damages they seek to impose liability upon the city. The city denies such liability and has retained and

refused to pay to the contractor, a percentage of moneys earned under the contract, upon the claim that an amount far exceeding the sum retained is due from the contractor under a clause of the contract that it shall pay stipulated damages of $600 for each and every day the contractor shall be in default in completing the work necessary to put the railroad in condition for operation after expiration of the time fixed by the contract. For the excess of such stipulated damage the city has interposed a counterclaim.

The jury has resolved the dispute in favor of the plaintiffs. It has found that the delay in the work was caused solely by the failure of the engineer to carry out promptly, and in strict accordance with the terms of the contract, the duties which the contracting parties have agreed he should perform and that this failure has increased the cost of the work and caused damage to the contractor in the sum of $813,000. As a result, the counterclaim of the city of New York was dismissed by the trial court and the judgment in favor of the plaintiffs, entered thereafter, includes the damages so found and also the sum of $71,090.15 payable under the terms of the contract with interest from December 31, 1919.

The contract purports to be made " between The City of New York, hereinafter called the City, acting by the Public Service Commission for the First District, hereinafter called the Commission, party of the first part, and Litchfield Construction Co., a corporation organized and existing under the laws of the State of New York, hereinafter called the Contractor, party of the second part." The Public Service Commission was given authority, subject to certain limitations, to make such a contract " for and in behalf of the City of New York." (Rapid Transit Act, section 26; Laws 1891, ch. 4.) The Commission has made this contract pursuant to the powers so given. The contractor under the terms of the contract agreed " to construct the part hereinafter described of a Rapid Transit Railroad with its

appurtenances." The city agreed to pay the contractor stipulated sums of money in the manner and upon the terms and conditions set forth in the contract. The contractor was required to complete the railroad at a fixed date or pay stipulated damages of $600 for each day's delay beyond such fixed date, unless the time for completion was extended. The contract provided for continuous control of the work and supervision of the details of the work by the Public Service Commission or its engineer. The engineer was at various stages of the work required to give directions to the contractor as to the manner in which the work should be done. Without directions from the engineer or approval of plan of work or drawings prepared by the contractor the work could not proceed. Indeed, no work might be begun until the Commission should issue to the contractor a permit authorizing him to proceed, and the contract provided that " no permits for excavations will be issued until the contractor has given satisfactory assurance to the engineer that the structural steel and other material needed for construction will be available." (Specifications, section 18.) The contract is too long for detailed analysis in this opinion. It is sufficient now to point out that throughout the contract are provisions which render impossible prompt performance of the work without the constant co-operation of the engineer. Though permit for excavation will not be granted without assurance to the engineer that structural steel will be available, it appears that such steel could not be fabricated until " working drawings to amplify the contract " were furnished by the engineer to the contractor. From these working drawings the contractor was required to make shop drawings which in turn required the approval of the engineer. The evidence shows that the speed with which the work could be carried on by a willing and efficient contractor was in large part dependent upon the promptness of the engineer, first in furnishing the working

drawings and then in approving the shop drawings sent to him, and in giving other directions necessary for steady progress of the work.

Concededly the work could not be finished within the required time unless promptly begun and steadily and efficiently prosecuted.  Even where the contract is silent as to the time within which the engineer must act, duty may be implied under such circumstances that he should act with due promptness, and not by delay or other act of commission or omission unreasonably hinder progress.  In regard to the furnishing of working drawings by the engineer and approval by him of shop drawings submitted by the contractor, the contract expressly fixes the time during which he must act.  " The first of these working drawings will be given to the contractor within thirty (30) days after this contract is delivered and the remainder from time to time as may be reasonably and necessarily required by the contractor, and the contractor shall promptly upon the delivery of this contract furnish a written statement to the engineer showing the order in which he desires the working drawings to facilitate the prosecution of his work, and this order will be followed so far as reasonably practicable and necessary."  (Specifications, section 4.)  Again the contract provides that " no work called for by said working or shop drawings shall be done until the approval of the engineer be obtained, which must be given or refused within twenty (20) working days after delivery to him at his office of such drawings in duplicate."  The plaintiffs claim that the engineer gave the contractor the first of the working drawings more than thirty days after the contract was delivered, and failed to give the contractor the remainder of the drawings from time to time as they were reasonably and necessarily required, and also failed to approve within reasonable time the shop or detailed drawings for the doing of the work.

There is at least some evidence that the engineer did not at all times act with the promptness stipulated in the contract. Indeed, the evidence shows without dispute that the first working drawings were not furnished within thirty days. Economical method of doing the work required that the structural steel should be erected as the excavation progressed. Because such steel was not at that time available the contractor used a slower and more expensive method. War was declared against Germany in April, 1917, at approximately the date set by the contract for substantial completion of the work. War conditions greatly increased construction costs thereafter. The jury has found that delay on the part of the engineer prevented delivery of structural steel at the time when excavation was being made and prevented completion of the contract before the declaration of war. Consequent damages it fixed at $813,000.

The Appellate Division has not held that there was no evidence to sustain the findings. It has decided as a matter of law that no liability rests upon the city for damages caused to the contractor by any delay of the engineer in carrying out his duties. It bases its conclusion in favor of the city upon the view that the engineer of the Public Service Commission acts in the performance of his duties as an officer of the State and not as an agent of the city. The decision is in accord with the opinion of the Appellate Division in the case of *Degnon Contracting Co.* v. *City of New York* (202 App. Div. 390). Upon appeal to this court that decision was affirmed, but on other ground. (Reported 235 N. Y. 481, 486.) The question of liability of the city for misfeasance or non-feasance on the part of the engineer was expressly left undecided. " We hold this conclusion even though we assume, without deciding it, that the city was liable for damages caused by the neglect of an engineer in the employ and under the control of the

Public Service Commission which had executed in its behalf the contract in question."

The Public Service Commissioners are not city officers. " Rapid transit for the city of New York has, for many years, been a matter of public interest, affecting not only the people of that city, but of the whole State. It has been generally regarded as a State affair." (*Matter of McAneny* v. *Board of Estimate*, 232 N. Y. 377, 393.) The Rapid Transit Act which conferred power upon State officers to enter into a contract for the construction of a rapid transit railroad " for and in behalf " of the city embodies a recognition of State interest in the matter. Nevertheless the construction of a rapid transit railroad like the building of streets or highways constitutes a "city purpose." (*Sun Publishing Association* v. *Mayor, etc.*, 152 N. Y. 257.) In constructing such a railroad, the city acts not as sovereign but as proprietor. (*Matter of Rapid Transit Commissioners,* 197 N. Y. 81.) The Commissioners are the agency created by the State to make contracts for the construction of such railroads in behalf of the city. (*Admiral Realty Co.* v. *City of New York*, 206 N. Y. 110.)

It has not been questioned that the Public Service Commissioners could bind the city to pay for the railroad in accordance with the terms of the contract made in its behalf. In the cases cited above, and in many others, this court has decided directly or indirectly that such contractual liability may be imposed on the city. It is said, however, that the city has not agreed to pay damages for non-performance of duties by the engineer, and that it cannot be held responsible for his misfeasance or non-feasance on the theory of *respondeat superior* because it never appointed him its agent. His powers and duties, it is said, devolve on him as employee of a State Commission and are not conferred upon him by the city; and the State has not made the Commission or its employees agents of the city except perhaps for the limited

purpose of making the contract in its behalf. We shall not now consider whether the Commission or its employees are in other sense agents for the city or whether the city, in some case that may arise hereafter, might be held liable for negligence or wrong in the performance of their statutory duties. We find that in this case the city is liable for failure of the engineer to act with promptness because the city undertook by its contract that the engineer should perform his duties in accordance with that contract. We base our decision not on a finding that the Public Service Commission and its employees are statutory agents of the city in regard to the construction of a rapid transit railroad, but on a finding that there has been a breach of contractual obligation assumed by the city.

The Rapid Transit Act does not compel the city of New York to construct rapid transit railroads at the expense of the city for the benefit of the people of the State. It merely regulates the manner in which such railroads shall be laid out and constructed after the city or the voters of the city have decided that such railroads shall be constructed. (*Sun Publishing Company* v. *Mayor, etc., supra; Matter of Rapid Transit R. R. Commissioners, supra.*) Though the contract must be made by State officers acting for and in behalf of the city, yet city officers must approve both its form and substance before it becomes effective. "All such contracts must before execution be approved as to form by the corporation counsel, or other chief legal adviser of such city." (Rapid Transit Act, sec. 36.) Consent of the board of estimate is required before the contract may be made. (Section 37.) These and other provisions scattered through the Rapid Transit Act show that a contract made in accordance therewith is in real sense the voluntary contract of the city, and that city officers share, at least to some extent, with State officers,

the responsibility of protecting the interests of the city
by insistence upon a fair and proper contract.  No
ground exists for applying special rules of construction
to the provisions of such contract, and breach of obligation
created by its terms, fairly construed, gives rise to liability
for resultant damages.

We have pointed out that duty to act with promptness
is imposed upon the engineer by express and by implied
terms of the contract.  Question still remains whether
under a fair construction of the contract, the city under-
took that the engineer would perform that duty.  The
answer to that question is hardly doubtful.  In the case
of *Degnon Contracting Co.* v. *City of New York* (235
N. Y. 481) this court in construing similar contracts
stated: " The defendant by the contracts thus executed
undertook to furnish certain plans for the steel work
through engineers whom the Public Service Commission
solely appointed and controlled."  The undertaking to
furnish these plans is inseparably connected with pro-
vision of the contract fixing the time and manner in
which such plans must be furnished.  Argument that,
since the engineer was not the employee of the city,
provision that he shall furnish the plans and drawings
for the work should not be construed as impliedly creating
an obligation on the part of the city, ignores the relations
of the parties and the evident intention of the contract.
The contractor expressly agrees to perform work accord-
ing to the contract and the specifications which are part
of the contract.  The specifications contain express state-
ments that the engineer shall perform certain functions
in specified manner.  Unless the engineer does so the
contractor cannot perform his contract.  The contractor
promises to perform because he has assurance in the
contract itself that the engineer will act in prescribed
manner.  That assurance is given him by the city as the
basis of the contract and in giving that assurance the

city promises that its terms will be carried out. It is liable for damages if the promise is broken. The trial judge correctly so held. Indeed, the contract in express terms recognizes that the contractor might claim compensation for damage " sustained by reason of any act, neglect, fault or default of the * *. * Commission or their agents," for in article XLIV it provides that statement of the nature of such claim must be filed with the engineer by the contractor; or otherwise his claim may be forfeited.

The Appellate Division has not passed upon the question whether the evidence in this case sustains the finding that delay by the engineer in furnishing drawings and approving plans has caused damage to the plaintiff in the sum of $813,000. It has affirmed the judgment in so far as it dismisses the counterclaim and permits recovery of the sums of money, payable under the contract, which the defendant has retained. Those parts of the judgment rest upon a finding that completion of the work was delayed by fault of the engineer and right to payment of stipulated damages thereby lost to the city. (*Mosler Safe Co.* v. *Maiden Lane Safe Deposit Co.*, 199 N. Y. 479.) We may not review this finding after it has been unanimously affirmed by the Appellate Division. No finding as to the damage caused by the engineer's default or as to the length of time such default continued is necessary to sustain those parts of the judgment which have been affirmed. We must, therefore, examine the record to determine whether the evidence is sufficient to show that delay in completing the work for almost two years beyond the contract time, and damage of over $800,000 was caused by the engineer's default.

Under the contract the engineer was bound to furnish the first of the working drawings within thirty days of the delivery of the contract. We have already pointed out that the undisputed evidence shows that the drawings

were not delivered within that time. This delay was perhaps in itself not serious. Certainly within twenty-six days of the stipulated time complete working drawings for the first part of the work were supplied. Such delay of twenty-six days at the inception of the work would hardly be sufficient to cause delay of almost two years in its completion. We have pointed out that the contract required prompt action by the engineer even after the first drawings were given to the contractor. Other drawings must follow " as reasonably and necessarily " required by the contractor. The plaintiffs produced evidence to show that if the contractor could have obtained the additional drawings earlier it could have performed the work more expeditiously and more economically. The defendant attempted to show that the engineer acted with reasonable speed. It is difficult, perhaps impossible, to point out what particular drawings should have been prepared and delivered more speedily; yet we think that upon the entire evidence the jury was justified in finding that the engineer failed almost continuously to show promptitude of action in furnishing drawings which were " reasonably and necessarily required " in view of the short time allowed by the contract for the completion of the work. There is evidence to the contrary which is by no means without persuasive force, yet upon the whole record a question of fact is presented. The plaintiffs further produced evidence without objection which tends to show that this lack of promptitude on the part of the engineer was the sole cause of the failure of the contractor to obtain structural steel and that failure to obtain structural steel in turn caused the contractor to use a method of construction which was more expensive than the method that would have been used if from the beginning steel had been available for erection as the excavation progressed. Method was adopted by which erection of the steel was postponed till a later stage of the work and timbers were temporarily used to hold up

**268** Litchfield Const. Co. *v*. City of New York.

[244 N. Y. 251] Opinion, per Lehman, J. [Dec.,

the top and sides of the space excavated till the steel could be put in their place. It is said that the method so adopted, in itself, retarded the work and thereby compelled the contractor to do part of the work after the time when it would otherwise have been completed, and during the period when entrance of this country into the war caused disruption of industry and tremendous increase of cost of all construction work.

The city urges that the contract allowed the contractor choice of method of construction, and that the city may not be held liable for damage caused by the contractor's choice of an uneconomical method. If option provided by the contract was in fact left open to the contractor, he may not complain because his choice of method caused him loss. In this case the jury has found upon sufficient evidence that the option was not left open. Choice of method was dictated by necessity of proceeding with the work without steel, since no steel was then available. An unbroken chain of cause and effect leads from the delay of the engineer in furnishing drawings to the adoption by the contractor of method of construction more expensive than would have been used if no such delay had occurred, and damage may be traced directly to the original default. There is more ground for contention that even though delay by the engineer in furnishing the working drawings naturally caused some delay in completing the work, other cause of delay also intervened and that at least in part the work would have been incomplete at the outbreak of the war even though the structural steel had been on hand when the work began. Undoubtedly other causes not contemplated when the contract was made may have intervened to delay the work to some extent. The question underlying recovery by the contractor for the entire increased cost of completing the work after April, 1917, is whether the work would have been completed at that time but for delay occasioned by the engineer. Otherwise, of course,

the plaintiffs would not be entitled to recover more than the increased cost of such work as was left unfinished because of fault of the engineer. The plaintiffs produced evidence to show that, in spite of all difficulties and other causes of delay, the work would have been completed in time if the supply of structural steel had been steadily available. The jury has so found. Other evidence did not require contrary inference. No ruling on other question of law has been pointed out to us which would justify an appellate court in setting aside as matter of law the finding that the plaintiffs are entitled to recover the full sum of $813,000 as damages for delays which the city has by contract given assurance should not occur, except in so far as this amount includes an item for interest on percentages of moneys earned which the city retained under the provisions of the contract.

If the contract had been completed within the contract period the city would have been compelled to pay to the contractor the full contract price before January 1st, 1918. At that date the contract was incomplete, and the city retained the sum of $114,896 out of moneys actually earned before that time. At the end of each month thereafter the city was bound to make payment of moneys earned during the progress of the work, subject to its right to retain an agreed percentage thereof. The amounts so retained at the end of each month till the end of the work varied from $129,000 to $69,000. Interest on the sums so retained till December 31st, 1919, the date when plaintiffs filed their claims with the comptroller, amounts to $11,094.18. The Appellate Division has correctly held that the plaintiffs were not entitled to recover such interest. There is no claim that all moneys were not paid as provided by the contract as the work progressed. The city had the right to retain a percentage of the moneys earned. The contractor became entitled to receive the retained percentage only when it fully completed the work. Delays by the engineer in turn

delayed the completion of the work by the contractor. At no time during such delay had the contractor furnished to the city the labor and materials upon which further payments could be required. The money which the contractor would be compelled to use in furnishing labor and materials necessary to complete the contract was stil unexpended by the contractor. It cannot be said that delay in completing the work caused the contractor to lose interest on moneys that would have been paid upon earlier completion when those moneys would have been earned only by expenditure of further capital. There is no more ground for the allowance of interest on retained percentages which became payable only when additional work was completed than there would be for similar allowance of interest on payments to be made for such additional work. In neither case did payments become due until additional moneys were expended in the performance of additional work, and it cannot be said that the contractor is damaged by loss of interest on withheld payment as a result of the engineer's fault unless we might balance against such loss of interest, interest on moneys which must be expended by the contractor before payment became due. The plaintiffs are, therefore, not entitled to recover the sum of $11,094.18 interest on retained percentages which is included in the verdict of $813,000.

The city urges and the Appellate Division has held that even if the evidence is sufficient to sustain the finding of damages in favor of the plaintiffs, a new trial is necessary "because of the improper admission in evidence of the payrolls of the contractor, because proof necessary to their admission was lacking." The plaintiffs proved their damages by showing the actual cost of completing the work after April, 1917, and the estimated amount the same work would have cost if performed during the contract period. They proved payment of actual cost by checks and vouchers. A great mass of

documents supporting the vouchers was admitted in evidence. Testimony to lay the foundation for the introduction of this documentary evidence occupied two days of the time of the court. Both parties agreed that the jury might be excused while this testimony was being given. Hardly any of the documents are printed in the record; yet we are asked to reverse a judgment entered upon the verdict of the jury after a month's trial because payrolls not printed in the record on appeal were introduced without sufficient foundation laid by preliminary oral testimony while the jury was absent.

These payrolls were kept in the usual course of business by employees of the contractor. Checks and vouchers show that the contractor paid its workmen in accordance with the time they worked as shown on the payrolls. Every person who made up these payrolls was produced or his absence properly accounted for. These payrolls were made up from timesheets kept by timekeepers. These timekeepers were also produced or their absence accounted for. The timekeepers testified in effect that they checked up the timesheets during the day, and when they left the work at the close of the day they checked the names of the men who then came to the work on the night shifts. Cross-examination elicited testimony that others checked the time of the night shifts while they were working and when they left at night. The men who checked the time of the night shifts during the night were not produced. There is no question that foundation for the introduction in evidence of the payrolls was sufficiently laid according to the strictest and most technical rules of evidence, in so far as they were made up from timesheets for workers during the day. It is said that without the oral testimony of the men who checked the time of the workers on the night shifts, the payrolls were inadmissible, under authority of the case of *Mayor, etc., of New York* v. *Second Avenue R. R. Co.* (102 N. Y. 572).

The documentary evidence, books, checks, vouchers

272 Litchfield Const. Co. *v.* City of New York.

[244 N. Y. 251]        Opinion, per Lehman, J.        [Dec.,

etc., were introduced by the plaintiffs to prove the actual cost of the work. They show beyond possibility of dispute actual payments for particular labor and materials which they include in the cost. The payrolls were admitted merely as part of the mass of documents which together tend to show that the labor and materials paid for were actually furnished. No one in this case is interested in the question of whether a particular workman at a particular hour of the night was doing a particular piece of work. It may well be that if such facts were material they could not be proven by entries in books so stating, at least without the supporting testimony of the man who gave the information contained in those entries. The plaintiffs here were establishing cost of work amounting to over a million dollars. Testimony of the timekeepers under the rule applied in *Mayor, etc., of N. Y. v. Second Ave. R. R. Co. (supra)* is sufficient to make the entries admissible as evidence that each man who received pay for work was actually working on the day or night for which he was paid. Such evidence does not exclude possibility that in some cases men did not work all the hours entered on the timesheet. None the less it tends to show that with possibly unsubstantial exceptions the labor which was paid for was performed. The plaintiffs were not required to go further. We do not now consider whether the same general principles and practical standards which in the case of *Mayor, etc., of N. Y. v. Second Avenue R. R. Co.* led to some relaxation of antiquated rule, might not, if applied to questions arising at the present time, lead to a broader statement of the field where relaxation is permissible. (See *The Spica*, 289 Fed. Rep. 436.) In the present case the evidence is admissible even without further relaxation of any established rule.

Two other claims for damages caused by alleged breach of contract on the part of the city still require consideration.

The section of the railroad which the contractor agreed

to construct is of course described in the contract. That description includes the words " including a spur curving northwesterly under Seventh Avenue, West Fifty-ninth Street, and Central Park, to a point about twenty-two feet west of the westerly building line of Seventh Avenue." Subsequently the contractor received a notice that " The Commission on June 1st, 1916, took action eliminating from the contract this stub track construction." By the elimination from the contract of this part of the work the contractor suffered damages in the sum of $16,813.65. The trial judge directed a verdict in their favor for this amount. The Appellate Division has held that the contractor is not entitled to these undisputed damages because the contract provided that the Commission reserved the right " to alter, in any way it may deem necessary for the public interest, the drawings aforesaid, in part or altogether, *  *  * without constituting grounds for any claim by the contractor." (216 App. Div. 517.) Although the spur which the contractor agreed to construct was only 187 feet long, it is part of the work as described in the contract which the contractor was bound to do and which the city was bound to pay for. Changes in the drawings might alter the manner in which such work was to be performed, but changes in the drawings could not change the description of the work itself as contained in the contract. (See *McMaster* v. *State of New York*, 108 N. Y. 542; *Petersen* v. *City of New York*, 205 N. Y. 323.)

The invitation to contractors to bid on the contract for the construction of the railroad included a statement of the estimated approximate quantities of the various classes of work which would be required for performance of the contract. These estimated quantities were thirteen per cent higher than the work actually required in the performance of the contract. The contractors were warned that the estimated quantities were " approximate

18

and only for the purpose of comparing on a uniform basis the bids offered for the work." We agree with the Appellate Division that under these circumstances the plaintiffs may not recover any damages caused to the contractor by overestimation.

Grant of extra allowance rests within the discretion of the courts below. We may not interfere with such discretion.

For these reasons the judgment of the Appellate Division should be modified in accordance with this opinion and as modified affirmed, with costs to the appellant in this court and in the Appellate Division.

HISCOCK, Ch. J., CARDOZO, POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgment accordingly.