HENRY H. KLEIN, Plaintiff, v. WILLIAM O'DWYER, as Mayor of the City of New York, et al., Defendants.

Supreme Court, Special Term, New York County, June 23, 1948.

*Henry H. Klein,* plaintiff in person.

*John P. McGrath, Corporation Counsel (Charles F. Preusse, W. Bernard Richland* and *Bernard Friedlander* of counsel), for defendants.

HECHT, J. This is a taxpayer's action brought, pursuant to section 51 of the General Municipal Law, against the Mayor and the Board of Transportation of the City of New York, to enjoin the collection of a ten-cent fare on any city-owned rapid transit system on and after July 1, 1948. Plaintiff moves for an injunction *pendente lite,* and defendants make a cross motion to dismiss the complaint upon the ground that it appears on the face thereof that it does not state facts sufficient to constitute a cause of action.

The complaint alleges that the present rate of fare on the New York City Rapid Transit System is five cents and has been so for many years; that the Mayor and board of transportation have increased such fare to ten cents effective July 1, 1948; that such increase was made pursuant to the powers conferred upon them by chapter 488 of the Laws of 1948; that such law is invalid; that the Mayor and members of the board of transportation " have greatly abused their power and discretion under the said law, if that law is held valid ", and that their actions " are illegal, oppressive and unjust and threaten the welfare of the City and its people."

The only question presented is the validity of chapter 488 of the Laws of 1948. This repealed section 36 of the Rapid Transit Law, and added a new section 36 which reads as follows: " § 36. *Rates of Fare.* The board of transportation, with the approval of the mayor, is hereby empowered to fix and adjust from time to time the rate of fare that may be charged any passenger traveling on any railroad publicly or municipally operated pursuant to the authority of this chapter, provided,

however, that any change in such rate of fare shall become effective on the first day of the next ensuing fiscal year of the city.''

The Legislature may delegate to an administrative body the power to prescribe the particular rates to be charged by particular carriers, public service corporations or other persons engaged in occupations or business affected with the public interest (*Village of Saratoga Springs* v. *Saratoga Gas etc. Co.*, 191 N. Y. 123, 140–145). By chapter 488 of the Laws of 1948, the Legislature has delegated the power to prescribe the rates to be charged by the rapid transit system owned by the city of New York to the board of transportation of the city. That board, although its members are appointed by the Mayor and it acts as the city's agent in operating the rapid transit system, nevertheless '' constitutes a State instrumentality in transit matters — a State function '' (*Matter of Colbert* v. *Delaney*, 249 App. Div. 209, 213 [1st Dept.], affd. 273 N. Y. 626). The additional requirement that the Mayor must approve the action of the board does not impair the otherwise valid delegation of authority to the latter.

Rapid transit in New York City has always been treated as a State function and control over it has been vested in a State instrumentality. In *Matter of McAneny* v. *Board of Estimate*, (232 N. Y. 377) the court sustained the constitutionality of chapter 134 of the Laws of 1921 which created the Transit Commission and conferred upon it jurisdiction (among other things) over the rapid transit lines in the city of New York. The court said, per McLaughlin, J., (pp. 393–394) : '' Rapid transit for the city of New York has, for many years, been a matter of public interest, affecting not only the people of that city, but of the whole state. It has been generally regarded as a state affair. The history of legislation on the subject shows it. The Rapid Transit Act (Laws of 1891, chap. 4) appointed as commissioners persons in office under a former act. The act of 1894 (Chap. 572) named five commissioners. The act was held to be constitutional. (*Sun Printing & Pub. Assn.* v. *Mayor, etc., of N. Y.* [8 App. Div. 230, affd., 152 N. Y. 257] *supra.*) Power to fill vacancies in the board of rapid transit commissioners was given to the mayor. (Laws of 1906, chap. 472.) In 1907 (Chap. 429) this power was taken from the mayor and given to the governor of the state, and the power which had theretofore vested in the rapid transit commission was transferred to a newly created commission. The same act provided that the

expenses of the commission incident to rapid transit construction in the city of New York should be paid by that city. That act was held valid. (*Gubner* v. *McClellan*, 130 App. Div. 716.) In 1919 (Chap. 520) the Public Service Commissions Law was amended by substituting in the place of the commissioners therein provided for, one transit construction commissioner, to be appointed by the governor of the state, to whom was transferred all the powers and duties of the former rapid transit board or any other board or body having to do with rapid transit in the city of New York; and in 1921 the act under consideration was passed, by which all the powers theretofore lodged in any board or body were transferred to the transit commission, together with increased powers, and three commissioners were named instead of one. All of the legislation bearing on the subject has for many years recognized that a duty rested upon the legislature to provide for rapid transit, such duty to be performed by itself or by an agent designated for the purpose, a function which the state, in its sovereign capacity, had a right to exercise irrespective of the city authorities, since it concerned the whole state just as much as the maintenance of highways or the management of other public utilities.''

In *Litchfield Const. Co.* v. *City of New York* (244 N. Y. 251, 263) the court made a similar holding regarding the powers of the Public Service Commission during the period while it had been charged with these functions.

Chapter 573 of the Laws of 1924 added article 8 to the Public Service Law. This established a board of transportation in each city containing a population of more than one million inhabitants, the members to be appointed by the Mayor (§ 130). All the powers and duties of the Board of Rapid Transit Commissions under the Rapid Transit Act (L. 1891, ch. 4), theretofore transferred to the Public Service Commission or the Transit Construction Commissioner or the Transit Commissioner were transferred to and conferred upon the Board of Transportation (§ 134).

'' If the board of transportation shall undertake or engage in public or municipal operation of any road or roads pursuant to the authority of the rapid transit act the rate of fare shall be five cents for an initial period not to exceed three years from the date of beginning such operation. If the aggregate revenues derived from the municipal operation of such road or roads during the third year of the initial period be insufficient

to pay (a) operating expenses exclusive of maintenance; (b) expenses of maintenance and repairs of structures and equipment, exclusive of depreciation; (c) contributions to a depreciation fund or funds, for replacement or renewal of worn out, obsolete or inadequate units of structure or equipment; (d) the amount of interest actually payable by such city on debt incurred or obligations issued on account of such rapid transit railroad or railroads so operated and (e) contributions to sinking fund to amortize and retire the debt incurred or obligations issued by said city on account of such rapid transit railroad or railroads, the board of transportation shall within sixty days adjust, fix and readjust the rate of fare on such road or roads, so as to produce an annual income sufficient to make all such payments." (§ 135; L. 1934, ch. 573.)

The initial test period of three years specified in the foregoing statute was progressively extended to four years (L. 1934, ch. 613), to six years (L. 1935, ch. 848), to eight years (L. 1938, ch. 551), and finally to ten years (L. 1940, ch. 730).

The latter statute eliminated the requirement that, if during the last year of the initial period the aggregate revenues were insufficient to pay operating and maintenance costs, depreciation and debt service, the board of transportation shall within sixty days adjust the rate of fare so as to produce an annual income sufficient to make all such payments. Instead, it provided that, after June 1, 1940, the board of estimate was empowered to fix the rate of fare.

By chapter 800 of the Laws of 1941, article 8 of the Public Service Law was consolidated with the Rapid Transit Act of 1891, and section 135 of the former statute was re-enacted as section 36 of the Rapid Transit Law. Chapter 200 of the Laws of 1942 added the requirement that any income fixed by the board of estimate could be submitted to a referendum by the city counsel. The statute remained in that form until its amendment by chapter 488 of the Laws of 1948, which has been quoted above.

This legislative history makes it clear that the rate of fare to be charged on the municipally operated rapid transit system in New York City is a matter of State concern, to be determined by the Legislature or by such agency to which it has delegated the power. In *Matter of Colbert* v. *Delaney (supra)* the Appellate Division, First Department said, per O'MALLEY, J. (249 App. Div. 209, 213): " It is true that the board of transportation in carrying on the enterprise of the Independent

Subway System is acting as the city's agent. (*Matter of Rapid Transit Railroad Commissioners*, 197 N. Y. 81.) Ordinarily, of course, the principal controls the agent. But under the authorities the board of transportation, successor to all the powers with which its predecessors under various statutes were vested, constitutes a State instrumentality in transit matters — a State function. (*Litchfield Const. Co.* v. *City of New York*, 244 N. Y. 251, 263; *Matter of McAneny* v. *Board of Estimate, etc.*, 232 id. 377; *McGovern* v. *City of New York*, 185 App. Div. 609.) So here, it seems to us, that the board of transportation is carrying on a State function, though acting as the agent of the city.''

Since the board of transportation is a State instrumentality, carrying on a State function, no taxpayer's action lies against it; such action may be brought to prevent acts only of officers, agents and other persons acting '' for and on behalf of any county, town, village or municipal corporation in this state * * * .'' (General Municipal Law, § 51.)

To the extent that the complaint seeks to prevent action by the Mayor, it fails to state facts sufficient to constitute a cause of action. The allegation that his act was illegal has already been disposed of. Where illegality is not shown, the complaint in the taxpayer's action to prevent action by a municipal official must allege fraud, collusion, corruption or bad faith (*Talcott* v. *City of Buffalo*, 125 N. Y. 280, 285–288). No such allegation is found in the complaint.

The cross motion to dismiss the complaint is granted.